IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MABIOR JOK,

    PLAINTIFF,

vs.

CITY OF BURLINGTON, VERMONT,          Civil Actions No. 2:19-CV-70
BRANDON DEL POZO,
JASON BELLAVANCE,
JOSEPH CORROW, and
JANINE WRIGHT

    DEFENDANTS.

**PLAINTIFFS' MOTION TO RECONSIDER COURT'S PREVIOUS RULING PERTAINING TO NANCY STETSON'S QUALIFICATIONS TO TESTIFY AND REQUEST THAT DEFENDANT CLARIFY THEIR POSITION**

    NOW COMES, Plaintiff Mabior Jok, and files this motion based upon his good-faith understanding that former Burlington Police Department (BPD) Crime Data Analyst, and current City Data Analyst Nancy Stetson is qualified to analyze, report upon, and testify regarding BPD data and her findings related to that data.[1]  Furthermore, Nancy Stetson is qualified to interpret data.  In the past, Defendant conceded that Ms. Stetson was qualified to testify about her data and findings, but then verbally advised the Court that Ms Stetson was not qualified to further interpret her data.  Following Defendant's statement, Plaintiff challenged Defendant's representations in this regard, pointing out that Ms. Stetson regularly interpreted data in her emails and during her former and current employment with BPD.

---

[1] The parties wish to update the court and supplement the current case deadlines as the parties have agreed that Nancy Stetson's deposition may occur beyond the May 1, 2021 deadline.  Further, the Defendant is agreeable to Plaintiff filing this Motion to Reconsider at this time, and agrees that Nancy Stetson's deposition will follow the Court's decision.

1

The Court's subsequent Opinion and Order, dated February 10, 2021, concluded that during her upcoming deposition, Ms. Stetson may testify that she is not qualified to interpret certain data, and Plaintiff is thenceforth precluded from inquiring into anything "beyond her professed area(s) of expertise." The Court continued, "[E]ven if Stetson has rendered an interpretation in the past, any opinions beyond her expertise will not be allowed as evidence and may not be the subject of questioning."

The foregoing Order puts Plaintiff in the difficult position where City Analyst Nancy Stetson, whom Defendant identifies as its own client by virtue of her employment by the the City of Burlington, may unilaterally prevent Plaintiff's questioning during her deposition by simply stating that a certain topic, or a subset of that topic, or certain data etc., is beyond her "expertise."[2]

Further, emboldened by the Court's Opinion and Order, Defendant has expressed to Counsel that it would not be appropriate for Ms. Stetson to provide testimony pertaining to *any* of her data and findings. See attached Affidavit of Robb Spensley. Notably, Defendant has not previously expressed that Nancy Stetson's emails or communications regarding BPD crime data were not accurate, or not within her experience or abilities to communicate. As indicated, in the past, Defendant conceded that Nancy Stetson was qualified to report BPD's crime data. See also ECF 171 at 2.[3]

Plaintiff believes that the ability to probe the qualifications of Ms. Stetson as well as her proffers of expertise, or lack thereof, and the basis for these proffers at the deposition stage is critical to proving his claims. That Defendant would utilize the wording of the Court's Order, essentially, to seek to realize its original goal of excluding the testimony of Nancy Stetson should not be tolerated. The Defendant is well aware that Nancy Stetson's reports and communications during the course of her employment highlight Defendant Joseph Corrow's problematic policing

---

[2] Plaintiff has been previously advised by Defendant that any City employee involved in this case is Defendant's client, including nonparties such as Burlington Ambulance Medical Responder Tyler Mitchell, and Burlington City Analyst Nancy Stetson.

[3] In ECF 175, attached as Exhibit 1 to provide context, Plaintiff informed the court that despite Defendant previously using Nancy Stetson's data and reports to defend itself in this action, Defendant has never disclosed Nancy Stetson as a witness with knowledge about this case as required by the Federal Rules of Civil Procedure. See F.R.C.P. 26(1)(A)(i). Mr. Jok discovered the existence of Nancy Stetson and her BPD crime data by reviewing ESI turned over by Defendant on or about July 8, 2020 at which time he contacted Defendant to propose to utilize Nancy Stetson as a non-report expert witness. Defendant declined, and ultimately filed motions to attempt to exclude the testimony of its own employee, BPD Criminal Data Analyst Nancy Stetson. Defendant has not contested the accuracy of this rendition of events.

issues, as well as BPD's problematic racial policing issues.  For example, as described by Ms. Stetson, City of Burlington Data reveals that Defendant Officer Joseph Corrow is mainly responsible for the search disparity experienced by Black drivers stopped by the Burlington Police Department.  See Email Exhibit 4.6.  Ms. Stetson also observed that in 2018, BPD's arrest rate for black persons was five times that of white persons. See Email Exhibits 4.23 and 4.24 at 1.

Defendant's efforts to downplay Nancy Stetson's witness capabilities appear to be premature and disingenuous.  Defendant has already conceded that Nancy Stetson was the source of the data for BPD's 2019 UOF report.  See ECF 171 at 2.  Furthermore, during his deposition, Co-defendant and former BPD Chief of Police Brandon del Pozo testified that the above described emails, specifically Exhibits 4.6, 4.23 and 4.24 authored by Nancy Stetson, contained information and assertions entirely within her area of expertise and that he relied upon them as accurate.  See Exhibit 2 Excerpts from Brandon del Pozo's Deposition pages 36-38, and pages 71-76.  Brandon del Pozo also testified that he relied on the accuracy of Nancy Stetson's data generally, and for BPD's 2019 UOF report.  Id. at 85-90.  Brandon del Pozo even confirmed that it was likely that Nancy Stetson also wrote portions of BPD's 2019 UOF Report.  Id. at 91.

Nancy Stetson is not only qualified to share her data and findings, which Defendant is now attempting to limit, she is also qualified to interpret her data.  A review of Exhibits 4.6, 4.23 and 4.24, endorsed by Brandon del Pozo as presenting information well within Nancy Stetson's expertise, reveals much interpretation of BPD crime data.  Nancy Stetson is not a mere data manager, or compiler of data, she is a data analyst.  CIO online magazine provides what appears to be the most common description of a data analyst, describing it thusly:

> Data analysts work with data to help their organizations make better business decisions. Using techniques from a range of disciplines, including computer programming, mathematics, and statistics, data analysts draw conclusions from data to describe, predict, and improve business performance. They form the core of any analytics team and tend to be generalists versed in the methods of mathematical and statistical analysis.[4]

---

[4] https://www.cio.com/article/3439818/what-is-a-data-analyst-a-key-role-for-data-driven-business-decision.html

Nancy Stetson obtained a B.A. in Economics and Mathematics from Barnard College, and then obtained a Master's degree in Public Policy from the University of California Berkeley. See Exhibit 4.01 Stetson CV.  It is widely understood that a person with these credentials has been trained to analyze and interpret data.  See attached Affidavit of Economist Nancy Brooks. The Master of Public Policy (MPP) program at the University of Berkeley emphasizes the applied and quantitative dimensions of policy making and prepares students for careers in public leadership.[5]  Policy analysis is a technique used in public administration to enable civil servants, activists, and others to examine and *evaluate* the available options to implement the goals of laws and elected officials. The process is also used in the administration of large organizations with complex policies (emphasis added). It has been defined as the process of "determining which of various policies will achieve a given set of goals in light of the relations between the policies and the goals." [6]

Ms. Stetson has held multiple positions in the field as a researcher and Policy Consultant, and lists "data exploration" and "analysis" as among her specific skills.  See Exhibit 4.01 Stetson CV.  During March 2018-June 2020, Ms. Stetson was the Crime Data Analyst for BPD.  It was during this time that she sent the previously discussed email exhibits highlighting her findings.  Ms. Stetson describes that during her time with BPD, she "[R]ectified a lack of internal and external departmental communication by creating reports with daily updating data visualizations to inform on both significant incidents and overall trends."  Id.

Within her role as BPD's Crime Data Analyst, Nancy Stetson interacted directly with former-chief Brandon del Pozo.  She also interacted directly with the public, for example by attending events and leading discussions on how to interpret traffic stop data.[7]  Ms. Stetson holds herself out to the public as someone able to analyze and interpret data, and also trains others to do the same.  Ms. Stetson continues to interact with the public in her new role as Burlington City Data Analyst, such as when she attended a Burlington Police Commission meeting on December 15, 2020 to deliver her presentation on BPD's use of force.  See attached Thumbdrive Burlington Police Commission Exhibit 20.5.  Ms. Stetson began her presentation on use of force around the 1:54:00 mark of the recorded meeting.  During her presentation, she informed the commission

---

[5] https://linkedin.com/School/goldman-school-of-public-policy-cp/
[6] https://en.wikipedia.org/wiki/Policy_analysis
[7] https://btvcityandlake.org/2019/04/17/real-data-real-life/   at fourth picture.

about several trends within BPD's use of force, such as that approximately one in four use of force incidents involve a black subject, that use of force is concentrated in the downtown areas late at night, and that black subjects are much more likely to have guns pointed at them than whites.[8]

The repeated description of Ms. Stetson identifying "trends", as described by herself and Brandon del Pozo, re-emphasizes the logical conclusion that interpretation goes hand in hand with being a data analyst. Ms. Stetson described in her CV that while she worked directly for BPD, she "*[D]iscovered* previously unknown patterns in use of force and traffic stop data that explained police behavior (emphasis added)." Id. Ms. Stetson also presented a breakdown of BPD officer's use of force by officer, which highlighted Officer Corrow's frequent use of force. See Exhibits 4.2 and 4.22.[9]

As a former Crime Data Analyst for BPD, and now as the City Data Analyst, Ms. Stetson is clearly qualified to discuss her data. Furthermore, she is able to interpret her data which resulted in discoveries pertaining to BPDs use of force.

Nancy Stetson has authored numerous memos and reports that were in turn distributed to the general public by BPD. Defendant concedes that Nancy Stetson co-wrote a memo titled 2019 Equity Report Follow Up: Burlington Race and Arrest Rate Analysis. See Exhibit 4.011. The memo itself is titled as an "analysis" and contains constant interpretation and conclusions. For example, the report indicates that the data evaluated indicates certain "trends" such as "[I]n Burlington, the overall arrest rate and the disparity between Black and White arrest rates, has been falling since 2012. While the overall number of arrests has dropped substantially, the reduction in disparity between Black and White arrests has been modest." See Id. at 3. The memo contains much historical data and comparison, including from the time period when Officer Corrow slammed Mabior Jok to the ground.[10]

---

[8] Review of this exhibit is quite informative as Plaintiff's non-report expert witness Stephanie Seguino is also in attendance at this public meeting. Following Nancy Stetson's initial presentation, Stephanie Seguino strongly questions several of Nancy Stetson's assertions, such as her decision to attempt to emphasize that whites are more often harmed by BPDs use of force than blacks, when actually that particular comparison is not statistically significant and lies within the margin of error. Ms. Seguino then suggests that, like the Vermont State Police, BPD should stop trying to justify their use of force against blacks and address the issue of racial bias head on.

[9] According to Nancy Stetson's breakdown, between July 1, 2016 through March 2019, Officer Corrow made 258 arrests and used force 62 times. Thus, Officer Corrow apparently used force during almost 25% of his arrests.

[10] Similarly, Opposing Counsel will only go so far as to say that Nancy Stetson "co-wrote" another publicly available memo titled Burlington Police Data, Dashboard, and 2019/ 2020 Use of Force Addendum. See

One takeaway from the existence of these memos, which are available to the public, is that Nancy Stetson is clearly qualified to communicate, not only her data and findings, but her interpretations as well. Nor do these select memos represent the extent of Nancy Stetson's written work that has been shared with the public.[11]

Nancy Stetson continues to work specifically with BPD and with BPD's crime data in her current position as Burlington City Data Analyst. As Burlington City Data Analyst, Ms. Stetson also states that she "[A]dvised the school district on evidence of virus transmission in schools worldwide and mitigation strategies for successful reopening" and "[C]onsolidate(s) emerging research and best practices for the City's response to Covid-19. See Exhibit 4.01. Nancy Stetson continues to utilize her data expertise to provide information to and for the public.

The Defendant has never raised a relevancy argument pertaining to Ms. Stetson's involvement in this case because Ms. Stetson's specific communications and data clearly relate directly to Plaintiff's lawsuit, including Plaintiff's Monell and racial animus claims. Nor has Defendant argued to the Court that Ms. Stetson's data is not accurate for any reason. Yet Defendant prematurely seeks to keep Nancy Stetson's data and findings from the jury, and continues down a road that appears to discredit Nancy Stetsons' actual experience and abilities. Plaintiff believes that Defendant's actions and intentions, in tandem with the current Court Order, will prevent his ability to fairly participate in meaningful discovery.

"Although a district court has considerable latitude in determining the scope of discovery, it abuses its discretion when the discovery is so limited as to affect a party's substantial rights." Long Island Lighting Co. v. Barbash, 779 F.2d 793, 795 (2d Cir. 1985); citing Goldman v. Checker Taxi Company, 325 F.2d 853, 856 (7th Cir.1963); see Roelding v. Anderson, 103 U.S.App.D.C. 237, 257 F.2d 615, 619 (1958). In Long Island Lighting Co. v. Barbash . . . " the district court abused its discretion when it cut off discovery by suddenly ordering LILCO to

---

attached Exhibit 4.012. Given Defendant's specific concessions, but also representations fo a lack of expertise on the part of Ms. Stetson, it would be instructive to determine which sections Nancy Stetson authored.

[11] Based on information and belief there are likely numerous additional reports and data analysis available to be discussed at deposition. Based on information and belief, Nancy Stetson also authored Traffic Stop Outcomes by Race: An Analysis of 2016 & 2017 Data. See Exhibit 4.013. The article contains obvious analysis and interpretation throughout, for example the first subheading is titled, "[I]n circumstances in which they have the greatest discretion, Burlington police officers are as likely to issue a warning to black motorists as to white motorists." At the conclusion of this report, which is available on BPD's website, readers are instructed to contact Nancy Stetson with any comments, questions, or to obtain the raw data that underlies the report. See Id. at 4.

examine Matthews under oath — without notice or an opportunity to review the documents that had just been produced. Further, the district court improperly circumscribed counsel's questions solely to conversations between Matthews and the other defendants when it denied counsel's requests to question anyone other than Matthews. Under these circumstances, LILCO was denied a meaningful opportunity to establish that the subject advertisement was a solicitation within the meaning of 14(a). Id. See Sargent v. Genesco, Inc., 492 F.2d 750, 768 (5th Cir.1978).

"Grants of summary judgment on an incomplete record are generally disfavored, and this is particularly true where we conclude that the district court's discretion over the fact-finding process has been tainted by an erroneous view of the law. Long Island Lighting Co. at 795 citing e.g., Schlesinger Investment Partnership v. Fluor Corp., 671 F.2d 739 (2d Cir.1982) (reversing grant of summary judgment where discovery incomplete); Landmark Land Co. v. Sprague, 701 F.2d 1065 (2d Cir.1983) (same)."

For argument's sake, if in fact the Defendant had hired and retained a data analyst whose collection or assertions of data could not be trusted, Plaintiff believes this would contribute significantly towards a potential finding of deliberate indifference on the part of the City. "It may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 409 (1997); citing Canton v. Harris, 489 U.S. 378, 390 (1989). If in fact BPD was incapable of assembling or understanding their own crime and race data, it could certainly be suggested "that the municipality's indifference led directly to the very consequence that was so predictable." Brown at 410. When it comes to municipal liability, "[A] § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference. See, e.g. Fiacco v. City of Rensselaer, 783 F.2d 319 (2d Cir. 1986), cert denied.

Plaintiff does not believe that Nancy Stetson is in any way unqualified to relate her findings, but Defendant continues to move in this direction, offering that Nancy Stetson isn't qualified to do the job she was hired to do, and is not the expert she holds herself out to be. Plaintiff believes it may be valuable for the Court to discuss the Defendant's assertions with Nancy Stetson herself.

In previous motions, including ECF 171, Defendant has attempted to argue that Plaintiff missed deadlines pertaining to identifying Ms. Stetson as a non-report expert witness and that Ms. Stetson should therefore be excluded.[12]  Then, Defendant verbally, and unexpectedly, informed the Court that Ms. Stetson was not qualified to "interpret" data.  It is concerning that, in a lawsuit where Plaintiff has alleged racial animus on the part of Defendant, that Defendant is going to great lengths to attempt to shield the jury from relevant crime data information from BPD's own Crime Data Analyst.

While Defendant concedes that Nancy Stetson should be a fact witness, the Defendant now seeks to prevent the jury's exposure to her data.  For clarity, Plaintiff is still seeking for Nancy Stetson to be considered a non-report expert witness pertaining to the evidence for which she is qualified to testify, such as sharing, and interpreting within her expertise, BPD's crime data.

Federal Rule of Evidence 702 essentially codifies the standards laid out <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993) to determine when an expert witness may testify.

> **F.R.E. 702** states that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Defendant has made the mere bare assertion that Nancy Stetson stated that she isn't qualified to "interpret" data.[13]  Due to the content of Nancy Stetson's data and findings, such as demonstrated in Exhibits 4.6, 4.23 and 4.24, it is understandable why Defendant is motivated to

---

[12] To clarify the record, in ECF 171 Defendant also informed the Court incorrectly that Nancy Stetson had compiled the data for both the 2017 and 2019 BPD Use of Force reports and that Brandon del Pozo had "drafted" those reports. During his deposition, Brandon del Pozo confirmed that Nancy Stetson had no involvement with the 2017 report and he did not write it.  Nor did he write the 2019 report.  Brandon del Pozo edited the 2019 report.  See Exhibit 2 Excerpts from Brandon del Pozo's Deposition pages 82-83.

[13] It is not clear what Defendant has communicated or what Defendant means by "interpret."  Interpret what precisely? ...and in what context?  Defendant never informed the Court that Nancy Stetson cannot report on her findings, yet Defendant apparently intends to prevent their client from even testifying about her data and findings.

take this position. Ms. Stetson's findings often cut against the Defendant. However, Defendant's bare assertion, when compared to Nancy Stetson's qualifications, experience, and her written work, is far from clear. Nor is it adequate to limit Plaintiff's ability to participate in discovery or deprive the jury of relevant evidence going to the very heart of Plaintiff's claims.

Plaintiff interprets the Court's Discovery Order, which provides Defendant's client with control over the scope of questioning during her deposition, as akin to a protective order under FRCP 26(c). Fed.R.Civ.P. 26(c) permits a district court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing by a movant for the order of good cause. "[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." Virginia Gambale v. Deutsche Bank AG, 377 F. 3d 133, 142 (2d Cir. 2004); citing In re Agent Orange Product Liability Litigation, 821 F.2d 139, 145 (2d Cir.1987)."

Defendant has provided only a bare assertion that is in keeping with it;s own interests. Defendant has not, in Plaintiff's view, provided sufficient evidence to justify the existing Order. Should the Defendant seek to limit the disclosure of Ms. Stetson's testimony, Plaintiff would agree to limiting the dissemination of Ms. Stetson's deposition.[14]

Plaintiff believes discovery should be allowed to play out, and that the current Order is likely to lead to abuse of the Court's Order. Plaintiff believes that following Nancy Stetson's deposition, it would be appropriate for the Court to engage in an analysis involving the Daubert factors, including focusing on Ms. Stetson's principles and methodology. See e.g. General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

Defendant's previous representations regarding their client Nancy Stetson's abilities are not borne out by her qualifications and experience. Based upon Defendant's position, that Nancy Stetson is not qualified to give any testimony in this case, which Plaintiff believes goes well beyond anything contemplated by the Court, it is clear that Defendant will interpret the Court's

---

[14] The parties are also gearing up for motions for summary judgment at which point Plaintiff anticipates seeking to utilize Nancy Stetson's BPD crime data and findings.

Order to its liking during any deposition. Plaintiff requests that the Court consider, that regardless of her actual knowledge or expertise, Ms. Stetson, a non-lawyer, would surely be relying on her counsel for guidance and direction during any deposition.

Plaintiff requests:
- That prior to Nancy Stetson's deposition Defendant be required to describe its interpretation of the Court's Opinion and Order, dated February 10, 2021, specifically stating whether Defendant believes Nancy Stetson may be prevented from (1) sharing her data and findings, and (2) sharing further interpretations of her data and findings.
- that the Court allow Plaintiff a full and free deposition of Nancy Stetson.
- that the Court allow Defendant as much time as Defendant needs, consistent with maintaining current trial-readiness deadlines, to bring any subsequent challenges to the appropriateness of Nancy Stetson's testimony during deposition.

Prior to filing this motion, and according to Local Rule 26(c)(1), Plaintiff did speak on the phone multiple times with opposing counsel about these issues. Counsel also attempted to email with opposing counsel multiple times. See attached Affidavit of Robb Spensley.

DATED at Pittsford, Vermont, this ___th day of May, 2021.

**MABIOR JOK**

By: /S/ Robb Spensley_____
Robb Spensley, Esq.
Chadwick & Spensley, PLLC.
*Counsel for Plaintiff*
3232 Rte 7
Pittsford, VT 05763
Phone: 802-725-8318
robb@chadwicklawvt.com